# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**FRONTIER AG, INC.,**

    **Plaintiff,**

v.

**NUSEED AMERICAS INC.,**

    **Defendant.**

Case No. 18-2352-DDC-TJJ

## MEMORANDUM AND ORDER

Before the court is defendant Nuseed Americas Inc.'s ("Nuseed") "Partial Motion to Dismiss" (Doc. 27). This case involves several tort and warranty claims following the alleged failure of sunflower seeds to germinate at the expected rate. Nuseed contends Counts I, II, III, and V of plaintiff Frontier AG, Inc.'s ("Frontier") Amended Complaint are precluded by the Kansas Product Liability Act ("KPLA") and by Kansas's economic loss doctrine. Nuseed further contends that the implied warranty component of Frontier's warranty claim in Count IV is barred because there was no privity between Frontier and Nuseed. In response, Frontier asserts that the Federal Seed Act preempts the KPLA. And, Frontier argues Kansas's economic loss doctrine does not apply here because the sunflower seeds' failure to germinate resulted in damage to the fields where farmers had sowed the seeds. Frontier also disputes the proposition that it must demonstrate privity with Nuseed to make an implied warranty claim against Nuseed. The court concludes that: (1) the Federal Seed Act does not preempt the KPLA; and (2) Frontier, as a corporate entity who did not plant the sunflower seeds, must allege privity with Nuseed to advance an implied warranty claim. The court thus grants Nuseed's Partial Motion to Dismiss (Doc. 27).

## I. Factual Allegations

The court derives the following factual allegations from Frontier's Amended Complaint (Doc. 24).

Nuseed "is in the business of global agricultural hybrid enhanced yield rate seed manufacturing." Doc. 24 at 1 (Am. Compl. ¶ 2). Frontier is in the "seed retail business" and purchased "pre-packaged, pre-labeled confection sunflower seeds manufactured by Nuseed." *Id.* at 2 (Am. Compl. ¶ 9). Frontier purchased the sunflower seeds from a wholesaler—Legend Seeds, Inc.—and then sold the seeds to two farmers. *Id.* (Am. Compl. ¶¶ 9–10). The packaging containing the seeds "warranted a germination rate of 85%." *Id.* at 4 (Am. Compl. ¶ 27).

The two farmers who bought the sunflower seeds from Frontier complained that the seeds exhibited "erratic and poor emergence and poor yield." *Id.* at 2 (Am. Compl. ¶ 10). Because the seeds did not germinate at the expected rate, the farmers purchased additional fertilizer, used additional water, could not rotate their crops as scheduled, and "suffered and will continue to suffer weed intrusion on their cropland." *Id.* at 2–3 (Am. Compl. ¶ 10). To resolve the farmers' complaints, Frontier paid them a sum "in excess of $75,000.00." *Id.* at 3 (Am. Compl. ¶ 11).

Frontier then commenced this action against Nuseed, filing a five-count Amended Complaint. Count I presents a claim for negligence based on Nuseed's breach of its duty of care when "design[ing], manufacturing, testing, packaging, distributing[,] and inspecti[ng]" the sunflower seeds. *Id.* at 3 (Am. Compl. ¶¶ 12–15). Count II makes a failure to warn claim, contending Nuseed had a duty to advise Frontier about potential defects in the sunflower seeds. *Id.* at 3–4 (Am. Compl. ¶¶ 16–19). Count III raises a claim for strict liability. *Id.* at 4 (Am. Compl. ¶¶ 20–23). Count IV asserts claims for breach of two distinct warranties—the express

warranty of an 85% germination-rate on the packaging and the implied warranty of fitness and merchantability.  *Id.* at 4–5 (Am. Compl. ¶¶ 24–29).  Count V claims Nuseed is liable for negligent misrepresentation, contending that, independent from the 85% germination-rate printed on the packaging, Nuseed represented that the sunflower seeds "would germinate at a rate greater than the test result of a 56% germination rate."  *Id.* at 5 (Am. Compl. ¶¶ 30–34).

Nuseed moves to dismiss Counts I, II, III, and V, claiming that both the KPLA and Kansas's economic loss doctrine bar these four claims.  Doc. 27; Doc. 28 at 4–7.  Nuseed also moves to dismiss the implied warranty of fitness and merchantability prong of Count IV's warranty claims, arguing there was no privity of contract between Nuseed and Frontier because Frontier bought the sunflower seeds from Legend Seeds, not Nuseed.  Doc. 28 at 7–8.

Frontier responds, arguing that the Federal Seed Act preempts the KPLA.  Doc. 30 at 3–6.  And, Frontier argues Kansas's economic loss doctrine does not apply to any of the claims at issue currently because the Amended Complaint seeks to recover more than economic damages, *i.e.*, it also makes claims for damage to property from weed intrusion.  *Id.* at 6–7.  On Count V, Frontier separately argues that Kansas courts do not apply the economic loss doctrine to claims for negligent misrepresentation.  *Id.* at 7–8.  Finally, on the implied warranty portion of Count IV's claim, Frontier argues that it need not establish privity because implied warranties extend to natural persons who may be expected to use a product—in this case, the two farmers who planted the sunflower seeds.  *Id.* at 9–10.

In its Reply, Nuseed disputes that the Federal Seed Act preempts the KPLA.  But it also argues that even if the Federal Seed Act did preempt the KPLA, it also would preempt state common law tort actions.  Doc. 31 at 1–4. Nuseed disputes Frontier's argument for overcoming Kansas's economic loss doctrine, asserting that Frontier—who is suing on its own behalf and not

3

for the two farmers—only suffered monetary damages, not property damage. *Id.* at 4–8. And finally, Nuseed argues Frontier's implied warranty argument is misplaced because Frontier was not an intended user of the sunflower seeds and is not a "natural person" for purposes of the exception to the privity requirement. *Id.* at 8–9.

## II. Standards of Review

### A. Rule 12(b)(6) Standard

When considering a motion to dismiss under Rule 12(b)(6), the court must assume that the factual allegations in the complaint are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But this requirement does not extend to every assertion made in a complaint. The court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.     *Erie*[1] **Doctrine**

"Under the *Erie* Doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). "When the federal courts are called upon to interpret state law, the federal court must look to rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 947 (10th Cir. 2018) (quoting *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007)). When a federal court must predict how a state's high court would rule, the federal court should start its *Erie* analysis with decisions from the state's intermediate court of appeals. *Id.* And, in such a situation, a federal court should adopt the position of the state intermediate court of appeals "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

**III.   Analysis**

A.     **Import of Kansas Products Liability Act on Counts I, II, III, and V**

Nuseed argues the KPLA precludes Frontier from prevailing on its state common law tort claims for damages stemming from defects in the sunflower seeds. "The purpose of the KPLA [is] 'to limit the rights of plaintiffs to recover in product liability suits generally.'" *Gaumer v. Rossville Truck & Tractor Co., Inc.*, 257 P.3d 292, 298 (Kan. 2011) (quoting *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 861 P.2d 1299, 1309 (Kan. 1993)). The KPLA defines the term "[p]roduct liability claim" to include

> any claim or action brought for harm caused by the manufacture, production, making, construction, fabrication, design formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product. It includes, but is not limited to, any action based on, strict liability in tort, negligence, breach of express or implied warranty, breach

---

[1]     *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

5

of, or failure to, discharge a duty to warn or instruct, whether negligent or innocent, misrepresentation, concealment or nondisclosure, whether negligent or innocent, or under any other substantive legal theory.

Kan. Stat. Ann. § 60-3302(c). In adopting this definition, the KPLA "consolidates all product liability actions, regardless of theory, into one basis for liability." *David v. Hett*, 270 P.3d 1102, 1106 (Kan. 2011).

Frontier does not contest the effect of the KPLA on its claims generally. Instead, it argues that (1) the Federal Seed Act preempts application of the KPLA here and (2) the KPLA does not apply to the extent Frontier seeks to recover for "property damage loss." Doc. 30 at 2, 3–6. The court thus analyzes Nuseed's Motion to Dismiss on the assumptions that Frontier needed to raise its Counts I, II, III, and V claims as a single KPLA claim unless: (1) the Federal Seed Act preempts the KPLA; or (2) the KPLA does not cover claims for property damage.

### 1. Preemption Argument

The concept of preemption derives from the Supremacy Clause of the Constitution, which "provides that the 'Constitution, and the Laws of the United States which shall be made in Pursuance thereof,' are 'the supreme Law of the Land . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'" *Va. Uranium, Inc. v. Warren*, No. 16-1275, 139 S. Ct. 1894, 2019 WL 2493918, at *3 (June 17, 2019) (quoting U.S. Const. art. VI, cl. 2). Where a party asserts that federal law preempts state law, the burden is on that party to "point specifically to 'a constitutional text or a federal statute' that does the displacing or conflicts with state law." *Id.* (quoting *P.R. Dep't of Consumer Affairs v. ISLA Petroleum Corp.*, 485 U.S. 495, 503 (1988)). "In the interest of avoiding unintended encroachment on the authority of the States . . . a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption," and "pre-emption will not lie unless it is 'the clear and

6

manifest purpose of Congress.'" *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). "Evidence of pre-emptive purpose is sought in the text and structure of the [federal] statute at issue." *Id.* In short, generally "[i]nvoking some brooding federal interest . . . should never be enough to win preemption of a state law[.]" *Va. Uranium, Inc.*, 2019 WL 2493918, at *3.

There are three types of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption. *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010). Frontier's argument here relies on field preemption and the Federal Seed Act. Doc. 30 at 3–4. "Field preemption occurs when a 'state law . . . regulates conduct in a field that Congress intended the federal Government to occupy exclusively.'" *US Airways, Inc.*, 627 F.3d at 1324–25 (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990)). A court may infer field preemption when confronted with "a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Id.* (quoting *English*, 496 U.S. at 79). Field preemption also exists "where an Act of Congress touches a field in which the interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* (quoting *English*, 496 U.S. at 79).

The Federal Seed Act regulates the testing, certification, and labeling of seeds manufactured and packaged for purposes of interstate commercial sale. *See, e.g.*, 7 U.S.C. §§ 1562, 1571, 1611. Seed packagers regularly must test the germination rates of their seeds. They also must maintain their testing records for a period of three years. *See* 7 U.S.C. §§ 1571(c) (establishing timeframe for testing); 1572 (imposing recordkeeping requirement); 1593 (also governing the testing of seeds). And, packages containing certain seeds must identify the germination rate of the seeds. 7 U.S.C. §§ 1571(a)(8), (b). The Federal Seed Act precludes a

7

seed packager from relying on any "disclaimer, limited warranty, or nonwarranty clause" placed on the packaging as a defense to any breach of the requirements imposed by the Act. 7 U.S.C. § 1574. Finally, the Federal Seed Act delegates authority to the Secretary of Agriculture to "make such rules and regulations as he may deem necessary for the effective enforcement of th[e Act]." 7 U.S.C. § 1592.

The enforcement provisions of the Federal Seed Act allow for the seizure and condemnation of seeds that do not conform with the Act's requirements so long as the seeds at issue were sold or transported in interstate commerce. 7 U.S.C. § 1595. It is also a misdemeanor for a person to knowingly violate the Federal Seed Act or the regulations promulgated by the Secretary of Agriculture in furtherance of the Act. 7 U.S.C. § 1596(a). And, the Federal Seed Act authorizes the Secretary of Agriculture to institute an action against any person who has violated the Act and to apply to a court of appeals for enforcement of any order holding a person in violation of the Act. 7 U.S.C. §§ 1599, 1601.

When enacting the Federal Seed Act, Congress evidently sought to establish a uniform set of requirements for the testing, certifying, and labeling of seeds. Federal law has occupied this field, and federal law preempts state laws from imposing heavier or lighter testing, certification, or labeling requirements. But, the Federal Seed Act contains no provision creating an express or implied private right of action for an individual who has purchased seeds that do not comply with the Federal Seed Act or the derivative regulations promulgated by the Secretary of Agriculture. *Agricola Cuyuma SA v. Corona Seeds, Inc.*, No. CV 17-8220 DMG (JPRx), 2018 WL 6185969, at *7–9 (C.D. Cal. Aug. 27, 2018); *Moorer v. Hartz Seed Co.*, 120 F. Supp. 2d 1283, 1293–94 (M.D. Ala. 2000); *Ren-Den Farms, Inc. v. Monsanto Co.*, 952 F. Supp. 370, 374 (W.D. La. 1997). The question, then, is whether the regulatory scheme enacted by the Federal

Seed Act preempts the KPLA's effort to consolidate product liability claims into a single cause of action for claims alleging seed defects.

While a federal regulatory act may preempt states from enacting regulations, this preemption does not necessarily extend to preclude a plaintiff from relying on state tort remedies to pursue actions based on violations of federal regulations. *See US Airways, Inc.*, 627 F.3d at 1326 ("Congress may reserve for the federal government the *exclusive right to regulate safety* in a given field, yet permit the states to maintain *tort remedies* covering much the same territory." (quotation marks omitted)); *see also Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 519–20 (1992) (concluding 1965 version of Federal Cigarette Labeling and Advertising Act, which merely regulated the language of the warnings on cigarette packages, "pre-empted state and federal rulemaking bodies from mandating particular cautionary statements and *did not pre-empt state-law damages actions*." (emphasis added)).

Here, where the Federal Seed Act provides no private right of action, permitting state law to govern the nature of a private cause of action will not interfere with or impede the regulatory powers of the Secretary of Agriculture. Nor will it interfere with any purpose advanced by Congress through the Act. And, it appears, the only other court to address the issue has reached the same conclusion. *See Schmaltz v. Nissen*, 431 N.W.2d 657, 660 (S.D. 1988) (South Dakota Supreme Court concluding the Federal Seed Act "provide[s] criminal sanctions that are not intended to abrogate civil remedies for breach of warranty provided in the Uniform Commercial Code"); *cf. Moorer*, 120 F. Supp. 2d at 1292–93, 1295–97 (addressing viability of state-law claims and acknowledging Federal Seed Act but not discussing preemption). The court thus

concludes the Federal Seed Act does not preempt the KPLA's foreclosure of the claims raised in Counts I, II, III, and V of Frontier's Amended Complaint.[2]

## 2. Property Damage Loss Argument

In passing, Frontier's papers argue that the KPLA does not apply to those aspects of the claims in Counts I, II, III, and V that seek "damages based on non-economic loss such as the alleged other property damage." Doc. 30 at 6. Frontier's argument fails for two reasons. First, as explained more fully elsewhere[3] in this Order, a "[p]roduct liability claim" includes "any claim or action brought for *harm* caused by the manufacture . . . packaging . . . or labeling of the relevant product." Kan. Stat. Ann. § 60-3302(c) (emphasis added). And, the definitional provision of the KPLA defines "harm" to include "(1) Damage to property." Kan. Stat. Ann. § 60-3302(d). The KPLA, by its very terms, thus encompasses claims for property damage. Second, and even if the KPLA did not explicitly refute Frontier's argument, Frontier did not suffer any property damage. Instead, Frontier merely suffered economic damage in the form of money it paid to two farmers to settle their claims.[4] And as Nuseed aptly points out, Frontier has

---

[2] In reaching this conclusion, the court also rejects Frontier's convenient proposition that the Federal Seed Act preempts the KPLA but does not preempt Kansas common law tort actions. Frontier fails to support this proposition with any authority or persuasive reasoning. And, Frontier's conclusion contradicts common sense. If the Federal Seed Act preempted a state's ability to pass a law providing a limited remedy for a violation of the Act, it also would preempt a state court from recognizing common law claims that provide such a remedy. *See Jenkins v. Amchem Prods., Inc.*, 886 P.2d 869, 879–80 (Kan. 1994) (rejecting proposition that federal law preempted statutory tort claim but not common law tort claim).

[3] *See supra* at 5–6.

[4] For this reason, even if the Federal Seed Act preempted the KPLA (but somehow not Frontier's ability to bring a common law tort action), the court would dismiss at least Counts I, II, and III of Frontier's Amended Complaint under Kansas's economic loss doctrine. Under Kansas law, this doctrine generally requires plaintiffs who suffer just economic losses to bring their claims in contract, not tort. *See N.W. Ark. Masonry, Inc. v. Summit Specialty Prods., Inc.*, 31 P.3d 982, 987 (Kan. Ct. App. 2001) (stating: (1) "The economic loss doctrine applies to both consumer and commercial buyers of defective products"; and (2) "Generally, economic loss is a result of the failure of the product to perform to the level expected by the buyer, which is the core concern of traditional contract law"); *Koss Constr. v. Caterpillar, Inc.*, 960 P.2d 255, 259 (Kan. Ct. App. 1998) (concluding the economic loss doctrine bars tort actions for "inadequate value, costs of repair, replacement costs, and loss of use of the defective product").

sued only on its own behalf. It has not sued on behalf of the two farmers who sowed the seeds and allegedly suffered property damage.

### 3. Conclusion

Based on the arguments presented by the parties, the court grants the portion of Nuseed's motion seeking to dismiss Counts I, II, III, and V of Frontier's Amended Complaint. Frontier failed to plead its various tort theories as a single action under the KPLA and the Federal Seed Act does not preempt the KPLA's consolidation of tort claims, arising from defects in seeds, into a single products liability action. Finally, Frontier's property damage allegation does not defeat application of the KPLA because the KPLA covers claims for property damage and because the farmers, not Frontier, suffered the property damage alleged in the Complaint.

### B. Privity and Count IV Implied Warranty Claim

Count IV of Frontier's Amended Complaint presents claims for breaches of two kinds of warranties—express warranty and implied warranty of fitness and merchantability. Doc. 24 at 4–5 (Am. Compl. ¶¶ 24–29). Nuseed's motion argues that Frontier cannot prevail on an implied warranty claim because there is no privity between Nuseed and Frontier since Frontier purchased the seeds from Legend Seeds.

Under Kansas law, "[a]n implied warranty does not arise from an agreement, as such, between the parties, but [instead] is imposed by operation of law on the basis of public policy for the protection of the people." *Prof'l Lens Plan, Inc. v. Polaris Leasing Corp.*, 675 P.2d 887, 892 (Kan. 1984) (emphasis omitted) (quoting *Chandler v. Anchor Serum Co.*, 426 P.2d 82, 89 (Kan. 1967)). In 1966, Kansas adopted the Uniform Commercial Code's provision governing breach of implied warranty actions, enacting Section 84-2-318 of the Kansas Annotated Statutes. *Id.* at 894. That provision states, in pertinent part:

> A seller's warranty whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty.

Kan. Stat. Ann. § 84-2-318. Under this provision, a natural person who is an end-user or consumer of a product may bring an implied warranty claim against the manufacturer of the product without alleging privity with the manufacturer. But, Kansas courts have rejected breach of implied warranty claims against "remote sellers." *See Limestone Farms, Inc. v. Deere & Co.*, 29 P.3d 457, 461 (Kan. Ct. App. 2001) ("[I]mplied warranties cannot extend to the remote seller."); *Koss Const.*, 960 P.2d at 260 (relying on *Professional Lens Plan, Inc.* to conclude no implied warranty exists between manufacturer and downstream commercial purchaser where product sold through middleman); *see also Prof'l Lens Plan, Inc.*, 675 P.2d at 898–99 ("We conclude implied warranties of fitness and merchantability are not extended to a remote seller or manufacturer of an allegedly defective product, which is not inherently dangerous, for only economic loss suffered by a buyer who is not in contractual privity with the remote seller or manufacturer."). And Kansas courts have rejected implied warranty claims raised by downstream purchasers who are corporate entities on the theory that a corporate entity is "not a natural person" for purposes of § 84-2-318. *See Limestone Farms, Inc.*, 29 P.3d at 461 (concluding Limestone Farms was not a natural person and could not advance implied warranty claim where it suffered economic injury rather than personal injury).

Applying § 84-2-318 and Kansas law interpreting that provision, the court concludes Frontier may not prevail on an implied warranty claim against Nuseed. Frontier is a corporate entity and thus is not a natural person reasonably expected to plant the seeds. The court thus grants Nuseed's Partial Motion to Dismiss the implied warranty claim asserted in Count IV of Frontier's Amended Complaint.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Nuseed's Partial Motion to Dismiss (Doc. 27) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** Counts I, II, III, and V of Frontier's Amended Complaint (Doc. 24) are dismissed in their entirety and the breach of implied warranty aspect of Count IV is dismissed.

**IT IS SO ORDERED.**

**Dated this 17th day of July, 2019, at Kansas City, Kansas.**

**s/Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**